UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

IRIS M. GARCIA,

                      Plaintiff,                    05-CV-0661T

          v.                                    **DECISION**
                                                           **and ORDER**

JO ANNE B. BARNHART,
Commissioner of Social Security

                      Defendant.
_____

## INTRODUCTION

Plaintiff Iris Garcia ("Garcia" or "Plaintiff"), brings this action pursuant to Title XVI of the Social Security Act, claiming that the Commissioner of Social Security ("Commissioner" or "Defendant") improperly denied her application for Supplemental Security Income ("SSI") payments. Specifically, the plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") who heard her case was erroneous because it was based upon an erroneous legal standard and was not supported by substantial evidence in the record.

Both parties move for judgment on the pleadings pursuant to 42 U.S.C. 405(g) and Rule 12(c) of the Federal Rules of Civil Procedure. The Commissioner claims that the ALJ's decision was supported by substantial evidence whereas the plaintiff claims the opposite. Because this court finds that the Commissioner's decision was not supported by substantial evidence, judgment on the pleadings is hereby granted for the plaintiff.

Page -1-

## BACKGROUND

On April 18, 2000, Plaintiff Iris Garcia applied for SSI payments claiming that she became disabled on December 30, 1996 due to HIV/AIDS, depression, and Hepatitis C (Tr. 90). She was 37 years-old at the time of her application, had an 8th grade education in Puerto Rico, and was unable to speak, read, or write in English (Tr. 17, 114, 268-69, 500).

Garcia came to the continental U.S. in 1989 and fell into intravenous drug abuse (Tr. 491-93). She was diagnosed with HIV in 1996 and discontinued illicit drug use in 2001 (Tr. 490, 497).

The Social Security Administration initially denied Garcia's application and she did not appeal (Tr. 110). She then filed a second application on January 2, 2002 which was also initially denied. Garcia appealed the decision on her 2002 application and an administrative hearing was held on July 1, 2004 before ALJ William Pietz (Tr. 30, 35-38, 78-81, 480-504). On October 25, 2004 the ALJ found that Garcia was not disabled and, on July 14, 2005, the Social Security Appeals Council denied review of the ALJ's decision (Tr. 5-9, 12, 13-25). The plaintiff then filed this action on September 19, 2005.

## DISCUSSION

### I. JURISDICTION AND SCOPE OF REVIEW

Title 42, Section 405(g) of the United States Code grants jurisdiction to Federal District Courts to hear claims based on the

denial of Social Security benefits. Mathews v. Eldridge, 424 U.S. 319, 320 (1976). Additionally, Section 405(g) directs that the District Court must accept the Commissioner's findings of fact if those findings are supported by substantial evidence in the record. See Bubnis v. Apfel, 150 F.3d 177, 181 (2d Cir. 1998); see also Williams v. Comm'r of Soc. Sec., No. 06-2019-cv, 2007 U.S. App. LEXIS 9396, at *3 (2d Cir. Apr. 24, 2007).

Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Metropolitan Stevedore Co. v. Rambo, 521 U.S. 121, 149 (1997) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Section 405(g) thus limits this court's scope of review to two inquiries: (i) whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole, and (ii) whether the Commissioner's conclusions are based upon an erroneous legal standard. Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003); see also Wagner v. Secretary of Health & Human Serv., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

Both Plaintiff and Defendant move for judgment on the pleadings pursuant to 42 U.S.C. 405(g) and Rule 12(c) of the Federal Rules of Civil Procedure. Section 405(g) provides that the District Court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or

reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C.S. § 405(g) (2007). Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988).

A District Court should order payment of Social Security disability benefits in cases where the record contains persuasive proof of disability and remand for further evidentiary proceedings would serve no further purpose. See Carroll v. Secretary of Health and Human Serv., 705 F.2d 638, 644 (2d Cir. 1981). The goal of this policy is "to shorten the often painfully slow process by which disability determinations are made." Id. Because this court finds that (1) the ALJ's decision was not supported by substantial evidence and (2) the record contains substantial evidence of disability such that further evidentiary proceedings would serve no further purpose, judgment on the pleadings is hereby granted for the plaintiff.

**II.  STANDARD FOR ENTITLEMENT TO SOCIAL SECURITY BENEFITS**

Under the Social Security Act, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months ..." 42 U.S.C. §§ 423(d)(1)(A) (concerning Old-Age, Survivors', and Disability Insurance ("OASDI")); 42 U.S.C. § 1382c(a)(3)(A) (2004) (concerning SSI payments).  An individual will only be considered "under a disability" if her impairment is so severe that she is both unable to do her previous work *and* unable to engage in any other kind of substantial gainful work that exists in the national economy.  §§ 423(d)(2)(A) and 1382c(a)(3)(B).

"Substantial gainful work" is defined as "work that exists in significant numbers either in the region where the individual lives or in several regions of the country." Id.  Work may be considered "substantial" even if it is done on a part-time basis, if less money is earned, or if work responsibilities are lessened from previous employment.  20 C.F.R. § 404.1572(a) (OASDI); 20 C.F.R. § 416.972(a) (SSI).  Work may be considered "gainful" if it is the kind of work usually done for pay or profit, whether or not a profit is realized.  §§ 404.1572(b) and 416.972(b).  Furthermore, "substantial gainful work" is considered available to an individual regardless of whether such work exists in her immediate area, whether a specific job vacancy exists for her, or whether she would be hired if she were to apply for work.  42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).  As discussed in section III of this Decision, the ALJ's finding that the plaintiff could engage in substantial

gainful work is not supported by substantial evidence in the record as a whole.

    **A.    The SSA's Five-Step Disability Evaluation Process**

When a claimant requests a Social Security disability hearing before an Administrative Law Judge, SSA regulations require the ALJ to perform the following five-step sequential evaluation:

- (i) if the claimant is performing substantial gainful work, she is not disabled;

- (ii) if the claimant is not performing substantial gainful work, her impairment(s) must be "severe" before she can be found to be disabled;

- (iii) if the claimant is not performing substantial gainful work and has a "severe" impairment (or impairments) that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment (or impairments) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, the claimant is presumed disabled without further inquiry

- (iv) if the claimant's impairment (or impairments) does not prevent her from doing her past relevant work, she is not disabled;

- (v) even if the claimant's impairment or impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her residual functional capacity and vocational factors, she is not disabled.

20 C.F.R. § 416.920(a)(4)(i)-(v). The ALJ in this case performed the required five-step evaluation and determined that: (i) the plaintiff had not engaged in substantial gainful employment since January 2, 2002; (ii) the plaintiff's impairments of AIDS,

Hepatitis C, depression and a history of polysubstance abuse were considered "severe" under §416.920(c); (iii) the plaintiff's conditions did not meet or medically equal one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1; (iv) the plaintiff had no past relevant work experience, and; (v) the plaintiff retained the residual functional capacity ("RFC") to perform "modified light work" consisting of lifting 10 pounds frequently and 20 pounds occasionally, standing and walking no more than 2 hours per day, dealing with simple instructions, and only occasionally dealing with the general public, co-workers, or supervisors (Tr. 24).

This court holds that the ALJ's finding adverse to the plaintiff in step (iii) [that none of the plaintiff's conditions equaled a listed impairment] was not supported by substantial evidence in the record as a whole. The plaintiff's depression satisfies the regulatory listings at 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04.

### B. Standard for Evaluating Depression

In step (iii) of the five-step evaluation, depression will qualify as a "listed impairment" if there is "medically documented persistence, either continuous or intermittent, of ... depressive syndrome characterized by ... sleep disturbance ... psychomotor agitation ... decreased energy ... [and] difficulty concentrating or thinking [which results] in at least two of the following:

- Marked restriction of activities of daily living; or

- Marked difficulties in maintaining social functioning; or

- Marked difficulties in maintaining concentration, persistence, or pace; or

- Repeated episodes of decompensation, each of extended duration..."

20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.04A, 12.04B.

This court finds that the plaintiff's depression satisfies the requirements of §§ 12.04A and 12.04B because there is substantial evidence in the record showing: (1) medically documented persistence of depressive syndrome characterized by sleep disturbance, psychomotor agitation, decreased energy, and difficulty concentrating or thinking; (2) the plaintiff has marked restrictions on activities of daily living; and (3) the plaintiff has marked difficulties in maintaining concentration, persistence, or pace.

**III.  The Plaintiff's Depression Qualifies as a "Listed Impairment" in Satisfaction of Step (iii) of the Evaluation Process**.

The plaintiff's depression qualifies as a "listed impairment" under subsections A and B of 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04 because the record contains substantial evidence of a depressive syndrome resulting in marked functional limitations. Medical documentation in the record shows persistent sleep disturbance, psychomotor agitation, decreased energy, and difficulty concentrating or thinking in satisfaction of § 12.04A.

The record also contains substantial documentation in satisfaction of § 12.04B of the plaintiff's marked restriction of activities of daily living as well as her marked difficulties in maintaining concentration, persistence, and/or pace.

While the record does not show that the plaintiff's HIV and Hepatitis C have progressed to the point where they would satisfy the regulatory listings at §§ 5.05 and 14.08,[1] the regulations do provide that:

> The criteria in 14.08 do not describe the full spectrum of diseases or conditions manifested by individuals with HIV infection. As in any case, consideration must be given to whether an individual's impairment(s) meets or equals in severity any other listing in appendix 1 of subpart P (e.g., a neoplastic disorder listed in 13.00ff). Although 14.08 includes cross-references to other listings for the more common manifestations of HIV infection, other listings may apply.
>
> In addition, ***the impact of all impairments, whether or not related to HIV infection, must be considered. For example, individuals with HIV infection may manifest signs and symptoms of a mental impairment (e.g., anxiety, depression)***, or of another physical impairment. Medical

---

[1] The plaintiff's HIV and Hepatitis C have not yet progressed to the point where they would satisfy the regulatory listings at §§ 5.05 and 14.08. The parties have not pointed to documentation of hemorrhaging, shunt operations, elevated serum bilirubin, ascites, hepatic encephalopathy, or liver biopsies required for Hepatitis C to satisfy the listings. The record indicates that the plaintiff has been compliant with her prescribed HIV antiretroviral ("ARV") medication regimen and her viral load dropped from nearly 57,000 viral copies per millilitre to undetectable levels (<50 copies/mL) over the period from October 30, 2001 to June 10, 2004 (Tr. 437-38, 457). Her immune system correspondingly rebounded from an AIDS-defining CD4+ T-cell count of 48 cells per microlitre to over 530/µL (Tr. 437). See 1993 Revised Classification System for HIV Infection and Expanded Surveillance Case Definition for AIDS Among Adolescents and Adults, http://www.cdc.gov/mmwr/preview/mmwrhtml/00018871.htm (last visited July 25, 2007) (defining AIDS as including all HIV positive people with a CD4+ T-cell count below 200 per µL of blood or 14% of all lymphocytes). It is also noted that while the record shows that the plaintiff's CD4+ counts rose above AIDS-defining levels, her counts were still low (Tr. 461, 464, 466).

> evidence should include documentation of all physical and mental impairments, and the impairment(s) should be evaluated not only under the relevant listing(s) in 14.08, but under any other appropriate listing(s).

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 14.00D6 (emphasis added). This court therefore evaluates the plaintiff's depression in light of the totality of her medical circumstances and finds that the record contains substantial evidence of disabling depressive syndrome under 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04.

### A. The Record Contains Substantial Medical Documentation of the Plaintiff's Persistent, Severe Depressive Symptoms.

Dr. Steven Dina, M.D. diagnosed the plaintiff with "chronic depression" and noted a past suicide attempt (Tr. 372). Dr. Aryeh Klahr diagnosed the plaintiff with "Depressive Disorder, NOS" and noted multiple psychiatric hospitalizations with suicide attempts (Tr. 365, 367). Psychologist Morris Newman, Ph.D. also noted the presence of "Depressive Disorder, NOS" and stated that the plaintiff suffered from four symptoms that satisfy § 12.04A (Tr. 382). These symptoms were sleep disturbance, psychomotor agitation or retardation, decreased energy, and difficulty concentrating or thinking. Id. Dr. Dina also noted suicidal ideation, an additional symptom that satisfies § 12.04A (Tr. 369).

The plaintiff testified at her administrative hearing that neither her family nor her daughter are aware of her HIV positive status and that she cries a lot because of the condition (Tr. 498). She also testified that the condition makes her depressed and

tired.  <u>Id.</u>  The record contains substantial documentation of the plaintiff's extensive medication regimen for HIV, depression, and other conditions:

- Zerit, 12 times per day
- Zithromax, 2 pills per week
- Bactrim, 1 tablet per day
- Epivir, 1 pill 2 times per day
- Multivitamin, 1 tablet per day
- Albuterol, 2-4 times per day
- Ensure, 3 cans per day
- Celebrex, 1-2 per day
- Trazodone, 100 mg once per day
- Cipro, 500 mg twice per day
- Sustiva, 1 tablet at night
- Methadone, 70 mg per day
- Nortriptyline
- Prilosec
- Famotidine
- Marinol
- Amlactin
- Triamcinolone
- Amitriptyline
- Neurontin

(Tr. 137-42, 268, 369, 431-32).  The plaintiff's Sustiva, an HIV antiretroviral, has a number of central nervous system side effects and the drug's Official FDA Information warns that "patients receiving Sustiva should be alerted to the potential for additive central nervous system effects when Sustiva is used concomitantly with alcohol or psychoactive drugs."  <u>See</u> Sustiva Official FDA Information, side effects and uses, http://www.drugs.com/pro/sustiva.html (last visited July 25, 2007).  This is relevant because the plaintiff has been on regular Methadone maintenance as a part of her substance abuse recovery program and Methadone is a

psychoactive drug (Tr. 332, 399, 408-410).[2]  The plaintiff's Marinol and Neurontin prescriptions are also psychoactive and the plaintiff's Trazodone, Amitriptyline, and Nortriptyline are all psychoactive compounds prescribed for her depressive symptoms (Tr. 268, 369, 400, 432). [3]

The plaintiff also complained of significantly increased depression and anxiety in December of 2002 due to her boyfriend's incarceration (Tr. 405).  Up to that point, the boyfriend had regularly accompanied her to medical appointments (Tr. 407, 409, 411, 413-14).  While the Commissioner of Social Security points to

---

[2] Methadone is prescribed to patients who are recovering from opioid addiction and is included in the Encyclopedia of Psychoactive Drugs. See Donald Hutchings, Methadone: Treatment for Addiction (Encyclopedia of Psychoactive Drugs, Series 1, Chelsea House Publications 1991).

[3] Trazodone (trade names Desyrel, Molipaxin, Trittico, Thombran, Trialodine) is a psychoactive compound with sedative, anxiolytic, and antidepressant properties. See Trazodone, Wikipedia - the free encyclopedia, http://en.wikipedia.org/wiki/Trazodone; see also Trazodone Official FDA Information, side effects and uses, http://www.drugs.com/pro/trazodone.html .

Amitriptyline (or Amitryptyline) hydrochloride (sold as Elavil, Tryptanol, Endep, Elatrol, Tryptizol, Trepiline, Laroxyl) is a tricyclic antidepressant drug. See Amitriptyline, Wikipedia - the free encyclopedia, http://en.wikipedia.org/wiki/Amitriptyline; see also Amitriptyline Official FDA Information, side effects and uses, http://www.drugs.com/pro/amitriptyline.html .

Nortriptyline is a tricyclic antidepressant marketed under the trade names Aventyl®, Pamelor® and Nortrilen®. See Nortriptyline, Wikipedia - the free encyclopedia, http://en.wikipedia.org/wiki/Nortriptyline, see also Nortriptyline Official FDA Information, side effects and uses, http://www.drugs.com/pro/nortriptyline.html .

Marinol is the commercial name for dronabinol, a cannabinoid prescribed as an appetite stimulant for AIDS, chemotherapy and gastric bypass patients. See Dronabinol, Wikipedia - the free encyclopedia, http://en.wikipedia.org/wiki/Dronabinol; see also Marinol Official FDA Information, side effects and uses, http://www.drugs.com/pro/marinol.html .

Neurontin is the commercial name for gabapentin, prescribed for the treatment of postherpetic neuralgia (nerve pain caused by the herpes virus or shingles). See Neurontin Drug Information, http://www.drugs.com/mtm/neurontin.html .

an April 25, 2002 assessment by nurse practitioner Laurie Engler which states that the plaintiff's depressive symptoms were "well controlled" (Def.'s Mem. at 5; Tr. 409), Nurse Engler included "Depression" in her December 11, 2001 and March 6, 2002 assessments with no mention of symptoms being controlled (Tr. 410-11). She also noted that "case management is going to schedule an appointment for mental health counseling at Lakeshore..." on December 16, 2002 (Tr. 405). The medical evidence shows that the plaintiff's depressive symptoms were not consistently controlled.

On January 16, 2003, Dr. Abel Sulaiman, M.D. included depression among the plaintiff's diagnoses and noted that she needed frequent medical appointments, was required to adhere to a complex medication regimen, and had unpredictable symptoms resulting in a need for frequent periods of rest (Tr. 399). Along with the plaintiff's depression, the doctor noted anxiety, difficulty concentrating, and difficulty completing tasks (Tr. 400). When presented with a range of work options from "Heavy" to "Sedentary," Dr. Sulaiman concluded that the plaintiff could not even perform sedentary work because the plaintiff's "chronic disease and prescription side effects cause fatigue, weakness, and unpredictable symptoms" (Tr. 399). In a later report completed on July 12, 2004, Dr. Sulaiman again opined that the plaintiff was unable to perform even sedentary work due to her "advanced disease process" (Tr. 426). The doctor noted peripheral

neuropathy characterized by decreased sensation in the plaintiff's hands and feet as well as generalized weakness that he attributed to Hepatitis C.  Id.  Electrodiagnostic studies showed evidence of neuropathy in the right wrist and elbow, nearly satisfying the regulatory listing at § 14.08H2 (Tr. 475).  Zerit, one of the plaintiff's HIV ARV medications, is associated with motor weakness and peripheral neuropathy.[4]  And from March 3, 2003 to October 15, 2003, the plaintiff's weight dropped from 134 pounds to 118 pounds, exceeding the "10 percent of baseline" requirement in the regulatory listings at § 14.08I (Tr. 448, 454).  Finally, when Dr. Sulaiman filled out his July 12, 2004 report, he again noted the plaintiff's continued depression and mental problems, stating that the plaintiff had "difficulty concentrating and remembering" (Tr. 427).  The ALJ acknowledged the plaintiff's sleep disturbance in his decision, and also mentioned a physical examination where the plaintiff "had poor eye contact and ... was crying and weeping" (Tr. 19).

### B. The ALJ Improperly Assigned Evidentiary Weights to the Treating and Examining Physician Opinions in the Record.

In his decision, the ALJ stated that the strongest evidence of disability came from treating physician Abel Sulaiman, M.D. (Tr. 021).  The ALJ chose not to give Dr. Sulaiman's opinion controlling weight because the doctor had filled out a "check block

---

[5]  See Zerit Official FDA Information, side effects and uses, http://www.drugs.com/pro/zerit.html (last visited on July 25, 2007).

form and not a treatment note" (Tr. 21).  The ALJ added that Dr. Sulaiman's opinion was based upon the plaintiff's incredible subjective complaints of fatigue, weakness, and depression and further stated that:

> "a diagnosis of depression by Dr. Sulaiman is beyond his expertise. The record indicates that [the plaintiff] has received **no mental health counseling, does not see any psychiatrist or take any psychotropic medications**."

Id. However, as detailed previously in this court's Decision, the record repeatedly shows that the plaintiff was prescribed *several* psychotropic medications, including Marinol, Neurontin, Trazodone, and Amitriptyline (Tr. 369, 400, 431-32). Furthermore, in addition to Dr. Sulaiman, the plaintiff was diagnosed with depressive disorder by at least *seven other medical professionals*, including Horacio Capote, MD, Mark Nepokroeff, MD, Cheryl Butensky, PhD, Laurie Engler, FNP, Aryeh Klahr, MD, Steven Dina, MD, and Morris Newman, PhD (Tr. 276, 293, 298, 332-34, 367, 372, 382). The ALJ also stated that the plaintiff had no episodes of decompensation, but reviewing psychologist Morris Newman, PhD noted that the plaintiff had "One or Two" episodes of extended duration decompensation (Tr. 20, 389).

The treating physician rule requires ALJs to give "good reasons" when discounting a treating physician's opinion. 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2). Because the ALJ failed to explain, with accurate statements, why he found Dr. Sulaiman's opinion not controlling, he improperly discounted a treating

physician's opinion that was consistent with other substantial evidence in the record.

Lastly, in determining whether a limitation satisfies the required "marked" threshold, SSA regulations specify that "marked" means:

> ...more than moderate but less than extreme. A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [the] ability to function independently, appropriately, effectively, and on a sustained basis.

§ 12.00C; see also 20 C.F.R. § 416.920(a). Because the great weight of evidence shows that the plaintiff's limitations interfere seriously with her ability to function independently, effectively, and on a sustained basis, this court finds that the plaintiff's functional limitations satisfy the "marked" threshold. The plaintiff has a documented, extensive history of depression that substantially interferes with her ability to perform basic work activities, result in marked restriction of activities of daily living, and result in marked difficulties in maintaining concentration, persistence, and pace.

## CONCLUSION

This court finds that the Commissioner's decision was not supported by substantial evidence and that the record contains substantial evidence of disability such that further evidentiary proceedings would serve no further purpose. I therefore grant

judgment on the pleadings in favor of the plaintiff and remand this matter to the Social Security Administration for calculation of benefits.

ALL OF THE ABOVE IS SO ORDERED.

                                        s/Michael A. Telesca
                                          MICHAEL A. TELESCA
                                    United States District Judge

Dated:   Rochester, New York
        July 27, 2007